**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

VALENTINE AKPA,

       *Plaintiff*,

    v.                               **Civil No.: 1:24-cv-02595-JRR**

**FREDERICK HEALTH HOSPITAL**, *et al.*,

       *Defendants*.

---

## <u>MEMORANDUM OPINION</u>

*Pro Se* Plaintiff Valentine Akpa brings this action against Defendants Frederick Health Hospital, Frederick Memorial Hospital, Reverand Pothin Ngyele, and the Maryland Commission on Civil Rights ("MCCR")[1] alleging discrimination and retaliation in violation of Title VII and the Maryland Fair Employment Practices Act ("MFEPA"), defamation, and violations of due process.[2] Pending now before the court are Defendants Frederick Health Hospital, Frederick Memorial Hospital, and Reverand Pothin Ngyele's Motion to Dismiss and Motion for a More Definitive Statement (ECF No. 17) and Defendant MCCR's Motion to Dismiss (ECF No. 21) (collectively "the Motions"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D.

---

[1] Plaintiff lists "EEOC/MCCR" as a single defendant in the Complaint with a Baltimore address. (ECF No. 1 at p. 2.) The EEOC and MCCR are separate legal entities. The EEOC is a federal agency headquartered in Washington, D.C., whereas the MCCR is a state agency based in Baltimore—at the address listed in the Complaint. Because Plaintiff does not appear to assert a claim against the EEOC as a separate entity, and it does not appear Plaintiff has served the agency with process, the court does not construe the Complaint to assert a claim against the EEOC. Accordingly, to the extent Plaintiff intends to sue the EEOC, any such claim is dismissed without prejudice.

[2] In the Complaint, Plaintiff lists both Defendants Frederick Health Hospital and Frederick Memorial Hospital, providing the same address for both. (ECF No. 1 at p. 2.) In the Motions, Defendants request that the court give Plaintiff leave to amend his complaint to replace these defendants with the proper legal entity, which Defendants identify as Frederick Health, Inc. (ECF No, 17-1 at p. 6.) "If the notice requirement is met within the Rule 4(m)… a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification." Fed. R. Civ. P. 15(c), Advisory Committee Notes, 1991 Amendment. Accordingly, the court gives Plaintiff leave to amend to replace Frederick Health Hospital and Frederick Memorial Hospital with Frederick Health, Inc., which the court will hereafter refer to as "Hospital Defendant."

Md. 2025). For the reasons that follow, by accompanying order, the Motions will be granted in part.

I.    **BACKGROUND**

In August 2021, Plaintiff, a Black Nigerian and legal resident of the United States, enrolled in a Clinical Pastoral Education ("CPE") training program at a hospital operated by Hospital Defendant. (ECF No. 1 at p. 7, ¶¶ 1, 6.) Plaintiff worked at Frederick Memorial Hospital as a full-time employee until he was terminated on May 4, 2022. *Id.* at ¶ 5. During his tenure as an employee of the hospital, Plaintiff completed two units of the CPE program. *Id.* at ¶ 7. Since February 2022, Plaintiff has repeatedly requested evaluations and training certificates for the credits he completed, which, under Hospital Defendant's policy, he is entitled to within 45 days of completing each unit. *Id.* at ¶¶ 8–9. Hospital Defendant, however, has withheld Plaintiff's evaluations and training certificates. *Id.* at ¶ 10. While refusing to provide Plaintiff with these documents, Hospital Defendant provided comparable documentation to other similarly situated employees. *Id.* at ¶ 13. Plaintiff alleges that Hospital Defendant has refused to provide him with these evaluations and certificates in retaliation for his protected activities. *Id.* at ¶ 10.

Additionally, Plaintiff alleges that Hospital Defendant discriminated against him by (1) denying his requests for paid time off ("PTO"), (2) denying his requests for unpaid time off ("UPTO"), (3) requiring him to turn in his work device, and (4) attempting to wipe files off his work device. (ECF No. 1 ¶¶ 14, 15, 26, 28.) During the relevant period, Hospital Defendant did not treat similarly situated employees in the same manner as Plaintiff. *Id.* at ¶¶ 14–23, 27. Prior to Plaintiff's termination on May 4, 2022, Hospital Defendant attempted to compel his resignation from the program on or around March 23, 2022. *Id.* at ¶ 24. Plaintiff alleges that, around the same time he was terminated, Defendant Reverand Pothin Ngyele, acting in conjunction with Hospital

Defendant, defamed Plaintiff as an act of retaliation. *Id.* at ¶ 30. While investigating Plaintiff's discrimination and retaliation claims, Defendant MCCR refused to share Hospital Defendant's statement with Plaintiff, which Plaintiff alleges was a violation of his due process rights under the Fourteenth Amendment. *Id.* at ¶¶ 31–33.

Plaintiff instituted this action on September 9, 2024. *Id.* The court liberally construes Plaintiff's Complaint to assert the following claims: (1) discrimination and retaliation under Title VII and the MFEPA against Hospital Defendant;[3] (2) defamation against Reverand Ngyele and Hospital Defendant; (3) and a 42 U.S.C. § 1983 claim for violation of due process under the Fourteenth Amendment against MCCR. Hospital Defendant and Reverand Ngyele move to dismiss and for a more definite statement; and MCCR moves to dismiss. (ECF Nos. 17, 21.) While Plaintiff's Complaint offers several factual allegations, it is replete with legal conclusions that this court cannot accept as true when determining whether the Complaint adequately states one or more claims for relief.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a

---

[3] It is unclear whether Plaintiff asserts his Title VII and MFEPA claims against Reverend Pothin Ngyele. To the extent Plaintiff claims that Ngyele discriminated and/or retaliated against him, "[i]t is well established that individuals cannot be liable under Title VII." *Murphy v. Adams*, No. DKC 12-1975, 2014 WL 3845804, at *11 (D. Md. Aug. 4, 2014) (citing *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir.1998)). Thus, Plaintiff cannot state a Title VII claim against Defendant Ngyele.

factual challenge. *Id.* A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A factual challenge asserts "that the jurisdictional allegations of the complaint [are] not true." *Id.* (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). "In a facial challenge, 'the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction.'" *Id.* (quoting *Kerns*, 585 F.3d at 192 (instructing that in a facial challenge to subject matter jurisdiction the plaintiff enjoys "the same procedural protection as . . . under a Rule 12(b)(6) consideration")). "[I]n a factual challenge, 'the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction.'" *Id.*

As to Plaintiff's due process claim, MCCR raises a facial challenge to the court's subject matter jurisdiction on grounds that it is protected by sovereign immunity under the Eleventh Amendment. (ECF No. 21-1 at pp. 4–5.) The defense of sovereign immunity is a jurisdictional bar because "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction." *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)). "Given the unique attributes of sovereign immunity, we have held that the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)).

**B. Federal Rule of Civil Procedure 12(b)(6)**

A motion asserted under Rule 12(b)(6) "test[s] the sufficiency of a complaint;" it does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

*Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).  Therefore, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).  "[A] complaint that provides no more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555).  "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. 8:21-CV-01637-PX, 2021 WL 5326463, at *2 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

## C.  Federal Rule of Civil Procedure 12(e)

Rule 12(e) provides in relevant part:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response.

FED. R. CIV. P. 12(e).

5

"Unlike a motion to dismiss for failure to state a claim, which attacks the legal sufficiency of a complaint, a motion for a more definite statement focuses on whether a party has 'enough information to frame an adequate answer.'" *Malibu Media, LLC v. Doe*, No. WDQ-14-cv-748, 2015 WL 857408, at *2 (D. Md. Feb. 26, 2015) (quoting *Streeter v. SSOE Sys.*, No. WMN-09-cv-01022, 2009 WL 3211019, at *10 (D. Md. Sept. 29, 2009) (citation and internal quotation marks omitted)). "A motion for a more definite statement challenges the unintelligibility or ambiguity of the complaint, not the adequacy of the allegations to state a claim." *Id.* As Wright & Miller explains:

> [T]he class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small. As the cases make clear, the pleading must be sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories on which the claimant might proceed; in other words the pleading must be sufficient to survive a Rule 12(b)(6) motion to dismiss.

*Rollakanti v. Holy Cross Hospital*, No. PX 16-02914, 2017 WL 2335544, at *5 (D. Md. May 30, 2017) (citing 5C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1376 (3d. ed. 2004). "Whether to grant a motion for a more definite statement is 'generally left to the district court's discretion.'" *Malibu Media*, 2015 WL 857408, at *3 (quoting *Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 824 (4th Cir. 1973)). "However, this motion is disfavored because of the liberal pleading standard." For the reasons set forth below, Plaintiff's pleading cannot survive a Rule 12(b)(6) motion to dismiss; therefore, the court will deny Hospital Defendant's motion for a more definite statement as moot.

## III.  <u>ANALYSIS</u>

As an initial matter, the court is ever mindful that *pro se* filings "must be construed liberally, . . . so as to do substantial justice," and are held to less stringent standards that filings drafted by lawyers. *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v.*

*Paradus*, 551 U.S. 89, 94 (2007); Fᴇᴅ. R. Cɪᴠ. P. 8(f); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

"In practice, this liberal construction allows courts to recognize claims despite various formal

deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th

214, 218 (4th Cir. 2022). Such liberal construction, however, does not absolve Plaintiff from

pleading a plausible claim, and this court "may not act as an advocate for a self-represented

litigant" by "conjur[ing] up" issues not presented. *Desgraviers v. PF-Frederick, LLC*, 501 F.

Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310,

314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775

F.2d 1274, 1278 (4th Cir. 1985)).

### A. Plaintiff's Due Process Claim Against MCCR

Plaintiff alleges that MCCR violated his due process rights by failing to provide him with

Hospital Defendant's statement submitted during MCCR's investigation into his Title VII

discrimination and retaliation claims. (ECF No. 1 at ¶¶ 30–33.) MCCR argues Plaintiff's due

process claim should be dismissed because MCCR did not waive its Eleventh Amendment

immunity and Plaintiff fails to state a claim for which relief can be granted.[4] (ECF No. 21 at p. 1.)

The court addresses both arguments below.

### a. Eleventh Amendment Sovereign Immunity

Plaintiff's due process claim is properly evaluated under 42 U.S.C. § 1983, which allows

individuals to sue government entities for constitutional violations that occur as a result of a

government policy or custom. *Earl v. Taylor*, No. 20-cv-01355-CCB, 2021 WL 4458930, at *2,

(D. Md. Sept. 29, 2021) (citing *Monell v. Dep't of Soc. Serv. of City of NY*, 436 U.S. 658, 690

(1978)). The Eleventh Amendment provides that "the Judicial power of the United States shall

---

[4] MCCR also argues for dismissal on grounds of insufficient service of process. Because Plaintiff's due process claim
is barred by Eleventh Amendment immunity, the court does not reach MCCR's 12(b)(5) dismissal argument.

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  Under the Eleventh Amendment, states generally enjoy immunity from suit unless immunity is waived by the state or abrogated by Congress.  *Bd. of Tres. v. Garrett*, 531 U.S. 356, 363–64 (2001) (explaining that "[t]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court.  We have recognized, however, that Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." (citations omitted)); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019) (holding that "state sovereign immunity bars all claims by private citizens against state governments and their agencies, except where Congress has validly abrogated that immunity or the state has waived it."). As explained *supra,* a finding that a defendant enjoys sovereign immunity from suit is a jurisdictional bar to the court's adjudicative power over such claim.  *Cunningham v. General Dynamics Info. Tech*., 888 F.3d 640, 649 (4th Cir. 2018).

"The Fourth Circuit has identified three exceptions to the Eleventh Amendment's prohibition of suits against a state or an arm of the state."  *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 409 (D. Md. 2022); *see Anderson v. Dep't of Pub. Safety & Corr.*, No. 24-1339, 2024 WL 4814882, at *1 (4th Cir. Nov. 18, 2024) (identifying the three Eleventh Amendment immunity exceptions).  The three exceptions are as follows:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 [121 S. Ct. 955, 148 L.Ed.2d 866] (2001).  Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 [124 S. Ct. 899, 157 L.Ed.2d 855] (2004).  Third, a State

> remains free to waive its Eleventh Amendment immunity from suit
> in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535
> U.S. 613, 618 [122 S. Ct. 1640, 152 L.Ed.2d 806] (2002).

*Doe.*, 595 F. Supp. 3d at 409 (citation modified) (quoting *Lee-Thomas v. Prince George's Cnty.*

*Pub. Schs.*, 666 F.3d 244, 249 (4th Cir. 2012)).

Preliminarily, MMCR asserts it is a Maryland state agency (ECF No. 21-1 at p. 5) – a fact

Plaintiff does not challenge and, therefore, concedes.  *Stenlund v. Marriott Int'l, Inc.*, 172

F.Supp.3d 874, 887 (D. Md. 2016) (noting that a party "concedes the point" when it fails to respond

to an argument).   Regardless, this is correct as a matter of law.  *Doe v. Catholic Relief Services,*

404 Md. 640, 657 n.8 (2023) (noting that "the Maryland Commission on Civil Rights [is an]

agency charged with administering . . . Maryland antidiscrimination" laws.)

Moving to the above-noted exceptions to sovereign immunity, none is applicable here.

With respect to abrogation, "Congress has not abrogated sovereign immunity for § 1983 suits."

*Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (citing *Quern v.*

*Jordan*, 440 U.S. 332, 345 (1979)).  Further, Plaintiff has not sought prospective injunctive relief

against a state official, so the *Ex parte Young* exception is inapplicable.  *MediGrow LLC v. Natalie*

*M. Laprade Med. Cannabis Comm'n*, 487 F. Supp. 3d 364, 373 (D. Md. 2020) ("The *Ex Parte*

*Young* exception only permits actions against state officials, not the State itself or its

instrumentalities.").  Finally, the State has not waived MCCR's Eleventh Amendment immunity

to suit in federal court.[5]  *Pevia v. Hogan*, 443 F. Supp. 3d 612, 632 (D. Md. 2020).

---

[5] Regarding waiver, this court has previously explained:

> [A] State may voluntarily waive its sovereign immunity by invoking federal court
> jurisdiction, or by making a clear declaration that it intends to submit itself to the
> jurisdiction of the federal courts . . . .
>
> In the absence of specific legislative authorization, neither the Attorney General
> for the State of Maryland nor any assistant thereto has any authority to waive
> Maryland's sovereign immunity in the course of representation of the State, any

With no applicable exception, MCCR has not waived its Eleventh Amendment sovereign immunity.[6]  Its application operates as a bar to this court's exercise of jurisdiction as to Plaintiff's § 1983 claim.  The court will therefore dismiss Plaintiff's due process.

### b.  Pleading Adequacy

Even absent operation of Eleventh Amendment immunity, Plaintiff's due process claim would fail because he fails to allege sufficient facts to establish a plausible, viable claim.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV § 1. "Procedural due process ensures that the government employs fair procedures when it seeks to deprive an individual of liberty or property." *Amador v. Mnuchin*, 476 F. Supp. 3d 125, 148 (D. Md. 2020) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).  While Plaintiff does not specify whether he asserts a substantive or procedural claim, this court interprets the Complaint to bring a procedural due process claim, because Plaintiff alleges he was deprived of his rights without fair procedure or "investigative process." (ECF No. 1 at ¶ 31.) "A plaintiff alleging a procedural due process violation must allege facts sufficient to show that he or she was deprived of a constitutionally cognizable interest in life, liberty, or property by 'some form of state action,' and that the procedures employed by the state were constitutionally inadequate." *McArthur v.*

_____

State entity, or any State officer or employee. As noted by the Fourth Circuit, the Maryland legislature has not authorized counsel for the State to waive sovereign immunity. In fact, Maryland statutory law expressly provides that the Attorney General's representation does not deprive any State officer, State employee, or unit of the State government of any sovereign immunity that is available to the officer, employee, or unit.

*Gross v. Morgan State Univ.*, 308 F. Supp. 3d 861, 866–67 (D. Md. 2018) (citations omitted).

[6] The court agrees with Defendant MCCR that Plaintiff's argument that the Commission's work-sharing agreement with the EEOC waives its Eleventh Amendment immunity is without merit and inapposite with the Supreme Court's requirement that "any waiver of sovereign immunity must be express and unequivocal." *Hammons v. Univ. of Md. Med. Sys. Co.*, 551 F. Supp. 3d 567, 588 (D. Md. 2021) (citing *Cunningham v. Lester*, 990 F.3d 361, 365 (4th Cir. 2021).

*Brabrand*, 610 F. Supp. 3d 822, 843 (E.D. Va. 2022) (quoting *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013)); *see Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015) ("To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law.").

"The Due Process Clause does not constitute a catch-all provision that provides a remedy whenever a state actor causes harm." *Evans v. Chalmers*, 703 F.3d 636, 647 n.2 (4th Cir. 2012). "In order to claim entitlement to the protections of the due process clause—either substantive or procedural—a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been deprived of that protected interest by some form of state action." *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) (citations omitted); *see Bailey-El v. Housing Authority of Balt. City*, 686 F. App'x 228, 229 (4th Cir. 2017) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty."). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." *Stone*, 855 F.2d at 172.

As Defendant correctly observes, Plaintiff fails to identify any authority that establishes a cognizable right to obtain Hospital Defendant's position statement during the investigation. (ECF No. 21-1 at p. 7.) Moreover, § 20-1101 of Maryland's State Government Article provides that information pertaining to an MCCR investigation is confidential "until the matter reaches the stage of public hearings." MD. CODE ANN., STATE GOV'T. § 20-1101. Without more, Plaintiff fails to state facts on which a reasonable conclusion could be drawn that he was entitled to receive or have access to Defendant's response statement during the Commission investigation. Accordingly,

Plaintiff's Complaint fails to plead facts, accepted as true, on which a reasonable conclusion could be drawn that MCCR deprived him of a protected interest. The court therefore does not reach the question of what adequate process. *See Stone*, 855 F.2d at 172.

## B. Plaintiff's Title VII & MFEPA Claims[7]

Plaintiff alleges that Hospital Defendant discriminated against him based on his race and national origin, and terminated his employment in retaliation of Plaintiff's legally protected activities. (ECF No. 1 at ¶¶ 2–3.) Defendants argue that Plaintiff (1) failed to exhaust his administrative remedies and (2) submitted a complaint so vague and ambiguous that Defendants are unable to craft a proper response to Plaintiff's allegations. *Id.* at pp. 5–7. The court addresses each argument in turn.

By way of background, "Title VII forbids (i) employment practices that discriminate against an employee on the basis of race, color, religion, sex, or national origin, 42 U.S.C. § 2000e-2, and (ii) retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII, 42 U.S.C. § 2000e-3." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 326–27 (4th Cir. 2018); *see Roberts v. Glenn Indus. Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021) (holding that "Title VII prohibits an employer from retaliating against an employee for complaining about prior discrimination."). "A plaintiff pursuing a claim under Title VII may either offer direct evidence of discrimination or, using indirect evidence, [he] may rely on the burden shifting framework that was adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Coleman v. Whitley*, No. 21-1181, 2022 WL 16630570, at *2 (4th Cir. Nov.

---

[7] MFEPA is the state law analogue to federal employment discrimination statutes. *Ensor v. Jenkins*, No. CV ELH-20-1266, 2021 WL 1139760, at *18 (D. Md. Mar. 25, 2021). Accordingly, "[c]ourts judge discrimination and retaliation claims brought under MFEPA by the same standards as those same claims brought under Title VII." *Lowman v. Maryland Aviation Admin.*, No. CV JKB-18-1146, 2019 WL 133267, at *4 (D. Md. Jan. 8, 2019) (citing *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 496–97 (D. Md. 2013)). Thus, the court will analyze Plaintiff's MFEPA claims in conjunction with his Title VII claims.

2, 2022).  Pursuant to *McDonnell Douglas*, the plaintiff bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

### a.  Administrative Exhaustion

Hospital Defendant first argues that Plaintiff failed to exhaust his administrative remedies as to his claim that he was discriminated against because of his race.  (ECF No. 17-1 at pp. 5–6.)  The court disagrees.

Under Title VII, a plaintiff must exhaust administrative remedies before bringing suit in court.  *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b)) ("It is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC.").  "The ADA incorporates Title VII's enforcement procedures, including the requirement that a plaintiff exhaust [his] administrative remedies by filing a charge with the EEOC before filing suit in federal court."  *Shigley v. Tydings & Rosenberg LLP*, 723 F. Supp. 3d 440, 449 (D. Md. 2024); *see Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (explaining same).

Although exhaustion is not jurisdictional, "it is a necessary step in pursuing the claim in [c]ourt."  *Jackson v. United States*, No. 8:22-cv-00772, 2022 WL 6754671, at *2 (D. Md. Oct. 11, 2022); *see Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 550 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast").  The filing of an administrative charge serves two important purposes: "'First, it notifies the charged party of the asserted violation. Secondly, it brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law.'"  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (quoting *Dickey v. Greene*, 710 F.2d 1003, 1005 (4th Cir. 1983), *rev'd on other grounds*, 729 F.2d 957 (4th Cir. 1984)).

Administrative exhaustion is not "simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). Rather, it "serves a vital function in the process of remedying an unlawful employment practice." *Balas*, 711 F.3d at 407.

Generally, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko*, 429 F.3d at 506. In determining whether a plaintiff has exhausted his remedies with respect to a certain claim, the court looks to claims raised in the administrative complaint, as well as claims "that would naturally have arisen from an investigation thereof." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)). "[W]hen the claims in [a] court complaint are broader than 'the allegation of a discrete act or acts in [the] administrative [complaint],' they are procedurally barred." *Id.* (quoting *Chacko*, 429 F. 3d at 508–10)).

In *Walton v. Harker*, 33 F.4th 165 (4th Cir. 2022), the Fourth Circuit succinctly explained:

> A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit. The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. [F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge. Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII [] lawsuit.

*Id.* at 172 (citations omitted). The court also recognizes that administrative charges "often are not completed by lawyers and as such 'must be construed with utmost liberality.'" *Balas*, 711 F.3d at 408 (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir.

1988)).  The court, however, is not "at liberty to read into administrative charges allegations they do not contain."  *Id.*

Hospital Defendant contends that Plaintiff failed to include a claim for race discrimination in his administrative charge and is therefore barred from pursuing such a claim in this action.  (ECF No. 17-1 at p. 6.)  While Plaintiff may not have expressly alleged in his administrative charges that he was terminated because of his race, such a claim would naturally have arisen from an investigation into his charges.  *See Parker*, 915 F.3d at 306, *supra*.  Indeed, Plaintiff alleged in his charge that he was discriminated against on the basis of national origin and that he experienced retaliation.[8]  (ECF No. 17-2 at p. 2.)  In view of the nature of the charge, the court concludes that whether, or that, Plaintiff's termination might have been (or was) based on race is a natural outgrowth of the charge as written; and, therefore, would have arisen naturally from investigation of his national origin and retaliation claims.  The court is therefore not persuaded that Plaintiff's claims are procedurally barred.  *See Parker*, 915 F.3d at 306, *supra*.

### b.  Unlawful Discrimination Based on Race and National Origin

Title VII prohibits an employer, *inter alia*, from discriminating against "any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 504 (D. Md. 2019) (quoting 42 U.S.C. § 2000e-2(a)(1)).  "At the motion to dismiss stage,

---

[8] While the court generally does not consider evidence outside of a complaint when ruling on a 12(b)(6) motion, the court may consider "documents integral to and relied upon in the complaint, ... so long as the plaintiff does not question their authenticity."  *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021).  "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'"  *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)).  In the employment discrimination context, courts regularly conclude that EEOC charges are integral to a plaintiff's complaint.  *See, e.g., Virella v. M.B.G. Enterprises Inc.*, No. CV RDB-21-1844, 2022 WL 36452, at *2 (D. Md. Jan. 4, 2022); *McKenzie-El v. Ports of Am.*, No. CV ELH-19-1980, 2020 WL 1185193, at *7 (D. Md. Mar. 12, 2020).  Further, the court may take judicial notice of EEOC charges without converting a motion to dismiss into one for summary judgment.  *Yampierre v. Baltimore Police Dep't*, No. CV ELH-21-1209, 2022 WL 3577268, at *17 (D. Md. Aug. 18, 2022) (quoting *Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 WL 2210895, at *1 n.3 (W.D.N.C. July 1, 2021)).  The court therefore considers this evidence here.

"[i]t has long been the rule that 'an employment discrimination plaintiff need not plead a prima facie case of discrimination under the evidentiary framework set forth in *McDonnell Douglas Corp.*'"[9] *Holloway v. Md.*, 32 F.4th 293, 298 (4th Cir. 1973). "Instead, a Title VII plaintiff is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'" *Bing v. Brivo Systems, LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).

"In employment discrimination cases, a plaintiff must plead that (1) [his] employer took an adverse employment action against [him], (2) because of [his] protected status." *Brooks v. United Parcel Serv.*, No. DKC 20-2617, 2021 WL 4339194, at *12 (D. Md. Sept. 23, 2021*); see McCleary-Evans*, 780 F.3d at 585 (explaining that the plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute"). "[A] complaint must contain '[f]actual allegations [sufficient] to raise a right to relief above the speculative level.'" *McCleary-Evans*, 780 F.3d at 585 (quoting *Twombly*, 550 U.S. at 555). "To allege that an employer acted because of an employee's protected status, there must be 'some connective thread between the alleged mistreatment and the protected status.'" *Brooks*, 2021 WL 4339194, at *12 (quoting *Gough v. Rock Creek Sports Club*, No. PJM 19-3533, 2021 WL 795447, at *2 (D. Md. Mar. 2, 2021)).

Plaintiff fails to plead adequate or plausible facts to establish connection (as opposed to correlation) between his protected status as a Black Nigerian and Hospital Defendant's (1) refusal to provide Plaintiff with his evaluations, (2) termination of Plaintiff's employment, (3) denial of Plaintiff's PTO and UPTO requests, (4) demand that Plaintiff turn over his work device, and (5)

---

[9] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973). To establish a prima facie Title VII racial discrimination claim under the McDonnell Douglas burden shifting framework, a plaintiff must demonstrate "(1) the plaintiff is a member of a protected class; (2) the plaintiff has performed satisfactorily on the job; (3) the plaintiff suffered an adverse employment action; and (4) the treatment plaintiff was subjected to differed from similarly situated employees outside the protected class." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 506-507 (D. Md. 2019).

attempt to erase files his work device.  Merely alleging that "Frederick Memorial Hospital, discriminated against Plaintiff on the basis of race and national origin" (ECF No. 1 at p. 7) is insufficient to overcome a Rule 12(b)(6) motion to dismiss.  *See Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 191 (4th Cir. 2016) (dismissing a Title VII race discrimination claim where the complaint offered only conclusory legal assertions without factual allegations plausibly linking the termination to the plaintiff's race); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Plaintiff merely speculates as to why Hospital Defendant denied his requests for paid and unpaid leave, and required return of his work device.  Such speculation "does not alone support a reasonable inference that the decisionmakers were motivated by bias," and therefore fails to satisfy the plausibility standard to withstand dismissal.  *McCleary-Evans*, 780 F.3d at 586 (citing *Iqbal*, 556 U.S. at 678).

Additionally, although Plaintiff references several coworkers whom he alleges were treated more favorably based on race and national origin, he fails to plead sufficient facts to establish that these individuals are appropriate comparators.  Typically, in cases brought through the *McDonnell Douglas* burden-shifting framework, a circumstance suggesting "an unlawfully discriminatory motive" is the existence of a similarly situated comparator outside the protected class who was subjected to different treatment.  *See Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 572 (4th Cir. 2023) (citation omitted).  "[T]o establish a valid comparator, the plaintiff must produce evidence that the plaintiff and comparator 'dealt with the same supervisor, [were] subject to the same standards and ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019) (quoting *Haywood v.*

17

*Locke*, 387 F. App'x. 355, 359 (4th Cir. 2010)).  "The similarly situated element requires a plaintiff to 'provide evidence that the proposed comparators are not just similar in some respects, but similarly-situated in all respects.'"  *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024) (emphasis in original) (quoting *Spencer v. Va. State Univ.*, 919 F.3d 199, 207–08 (4th Cir. 2019)).  While "a comparison between similar employees will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances," "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 714 (4th Cir. 2024) (first quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019); then quoting *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008)).

Here, even assuming Plaintiff and the coworkers referenced in the Complaint were subject to the same supervisors and standards, Plaintiff fails to allege facts that, accepted as true, show he and the employees mentioned were similarly situated, i.*e.,* without "differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *See Haynes*, 922 F.3d at 223–24, *supra*.  It is insufficient for Plaintiff to assert that he and his coworkers held "similar position[s]" (ECF No. 1 at ¶¶ 16–18, 20, 22).  Rather, as explained, Plaintiff must plead facts that "establish a plausible basis for believing that [his coworkers] were actually similarly situated." *Coleman*, 626 F.3d at 191.

### c.  Retaliation

Plaintiff alleges Hospital Defendant unlawfully retaliated against him by withholding certain evaluations and training certifications, terminating his employment, and requiring that he surrender his work devices.  (ECF No. 1.)

To state a claim for retaliation, Plaintiff must allege (1) he engaged in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal link exists between the protected activity and the adverse employment action. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). "Protected activity under Title VII includes complaints of discrimination based upon 'race, color, religion, sex or national origin.'" *Landino v. Sapp*, 520 F. App'x 195, 198 (4th Cir. 2013) (quoting *Balazs v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994)). Protected activity also "includes an employee's opposition to what he or she believes is an unlawful employment practice." *Bowman v. Balt. City Bd. of School Commissioners*, 173 F. Supp 3d 242, 248 (D. Md. 2016); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (holding protected activity includes "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities.")

Plaintiff's Complaint repeatedly states that Hospital Defendant retaliated against him for engaging in protected activity. (ECF No. 1 at ¶¶ 3, 8, 10, 13, 23, 25–26, 29–30.) "There are two categories of protected activity—opposition and participation." *Taylor v. Anne Arundel Cnty.*, No. WDQ-12-2468, 2015 WL 134197, at *12 (D. Md. Jan. 8, 2015) (citing *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Participation "includes an employee participating in an ongoing investigation or proceeding under Title VII[,]" such as filing an EEOC charge. *Jabari-Kitwala v. Montgomery Cnty. Pub. Sch.*, No. GLS 22-0069, 2023 WL 4175359, at *6 (D. Md. June 23, 2023) (citing *Netter v. Barnes*, 908 F.3d 932, 938-39 (4th Cir. 2018)). "Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Graver v. WESTAT, Inc.*, No. DKC 2004-0475, 2007 WL 9782526, at

*5 (D. Md. Jan. 16, 2007) (citing *Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981)).

Plaintiff's Complaint omits any description of the protected action he claims he took. "Frederick Memorial Hospital retaliated against Plaintiff for engaging in protected activities" is a legal conclusion, not a factual allegation. *Id.* at ¶ 3. Regarding participation, Plaintiff cannot rely on the EEOC charge as the protected activity, because it was filed more than four months after his termination. (Ex. 1, ECF No. 17-2 at p. 2.) Nothing in the Complaint suggests Defendant retaliated against Plaintiff for participating in another investigation or proceeding under Title VII, or the like. As for opposition activity, Plaintiff's asserts in opposition to Hospital Defendant's Motions that he filed complaints of discrimination and opposed his unequal treatment (ECF No. 19 at p. 3); but the Complaint is devoid of any facts to support this contention, and he cannot amend his Complaint through opposition to a Rule 12 motion. *Baltimore Flips Israel 2020 LLC v. Yosef*, 769 F. Supp. 3d 370, 401 (D. Md. 2025) (citing *McDonald v. LG Electronics USA, Inc.*, 219 F. Supp. 3d 533, 541 (D. Md. 2016)); *Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co.*, 912 F. Supp. 2d 321, 334 (D. Md. 2012), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 (D. Md. 1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998)).

Accordingly, Plaintiff's retaliation claim will be dismissed.

## C. Defamation

Plaintiff alleges that Defendant Ngyele, in conjunction with Hospital Defendant, defamed him as an act of retaliation. (ECF No. 1 at ¶ 30.) Defendant argues that Plaintiff's claim is barred by limitations. (ECF No. 17-1 at pp. 4–5.) As defamation is a matter of state tort law, Plaintiff's claim is analyzed under Maryland law. *See, e.g., Cannon v. Peck*, 36 F.4th 547, 559 (4th Cir. 2022) ("At base, defamation is a state-law tort claim.").

By way of background, to plead a claim of defamation in Maryland, a plaintiff is required to allege: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm."[10] *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012) (*quoting Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441 (2009)).

A statement that is defamatory "tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365 (D. Md. 2017) (quoting *Gohari v. Darvish*, 363 Md. 42, 54 (2001)). A statement that is "not substantially correct" is false, and "[t]he plaintiff carries the burden to prove falsity." *Piscatelli*, 424 Md. at 306 (quoting *Batson v. Shiflett*, 325 Md. 684, 726 (1992)). Further, for a defendant to be at fault, a plaintiff must show "at a minimum, the party making the false statement acted negligently." *Johns Hopkins Health Sys. Corp.*, 274 F. Supp. at 366 (citing *Hearst Corp. v. Hughes*, 297 Md. 112, 119–25 (1983)).

Defamation claims are subject a one-year statute of limitations in Maryland; and claims generally accrue when the defamatory statement is published. MD. CODE ANN., CTS. & JUD. PROC. § 5-105; *Johnson v. MV Transp. Inc.*, 716 F. Supp. 2d. 410, 413–14 (D. Md. 2010). Additionally, "when it appears clearly on the face of the complaint that the statute of limitations period has run, a defendant may properly assert a limitations defense through a Rule 12(b)(6) motion to dismiss." *Simon v. Gladstone,* No. 23-1431, 2025 WL 721317, at *3 (4th Cir. March 6, 2025) (citing *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)).

---

[10] For a statement that is defamatory *per se*, harm is "self-evident;" for a statement that is defamatory *per quod*, a plaintiff must plausibly allege (and later prove) the harm caused by the statement. *Rorie v. Bd. of Educ. of Charles Cnty.*, 653 F. Supp. 3d 217, 242 (D. Md. 2023) (citing *Metromedia, Inc. v. Hillman*, 285 Md. 161, 164 (1979)). Here, Plaintiff has not included the alleged defamatory statement in his Complaint.

Plaintiff argues the doctrine of continuing harm protects his claim from dismissal as untimely. (ECF No. 19 at pp. 4–5.) This doctrine operates to toll statutes of limitation in instances where continuous unlawful acts are committed regardless of a plaintiff's discovery of the wrong. *Chevron U.S.A. Inc. v. Apex Oil Co. Inc.*, 113 F. Supp. 3d 807, 820 (D. Md. 2015) (citing *Litz v. Md. Dept. of Env't*, 423 Md. 623, 647 n.9. (2013)). But "the continuous harm doctrine is not applicable to a defamation claim." *Callender v. Callender*, No. TDC-17-3249, 2019 WL 1980700, at *3 (D. Md. May 3, 2019) (citing *Long v. Welch & Rushe*, 28 F. Supp. 3d 446, 457 (D. Md. 2014)).

Plaintiff alleges that Reverend Ngyele made the defamatory statement "[i]n or around May 2022." (ECF No. 1 at p. 11.) Because Plaintiff did not file action until September 9, 2024, his defamation claim is barred by limitations.

Even had Plaintiff filed a timely defamation action, the court would dismiss it for failure to state a claim under Rule 12(b)(6). As mentioned above, Plaintiff fails to plead the nature or content (even general content) of the allegedly defamatory statement; and, therefore, of course fails to allege how or why it was untrue. Plaintiff merely alleges that Ngyele defamed him while acting on behalf of Hospital Defendant. This is obviously insufficient to state a claim.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, by separate order, Hospital Defendant and Reverand Ngyele's Motion to Dismiss and Motion for a More Definite Statement (ECF No. 17) will be granted in part and denied as moot in part; and Defendant MCCR's Motion to Dismiss (ECF No. 21) will be granted. Plaintiff's Complaint (ECF No. 1) will be dismissed without prejudice in its entirety.[11]

---

[11] Defendants seek dismissal with prejudice. The court declines to dismiss this action with prejudice. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court"). Relatedly, to the extent dismissal is for lack of subject matter jurisdiction,

Date: September 2, 2025                                    /s/_____
                                                          Julie R. Rubin
                                                          United States District Judge

---

it must be without prejudice, "because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *Goldman v. Brink*, 41 F.4th 366, 369 (4th Cir. 2022).